UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF MISSOURI

WESTERN DIVISION

| | |
|---|---|
| Lanard Toys Limited<br><br>                Plaintiff,<br><br>   vs.<br><br>Menard, Inc.<br>and<br>RMS International (USA) Inc.<br><br>                Defendant.<br><br>Menard, Inc. and RMS International (USA), Inc.<br><br>                Counterclaimants,<br><br>   vs.<br><br>Lanard Toys, Limited,<br><br>               Counterdefendant, | CASE NO. 4:17-cv-00550-SRB<br><br>**JOINT RULE 26(F) REPORT**<br><br>**Scheduling Conference**<br><br>Date:     November 2, 2017<br>Time:    11:00 a.m. (EST)<br>Courtroom: 7B |

      Pursuant to Rule 26(f) of the Federal Rules of Civil Procedure, Civil Local Rule 26-1, and this Court's Order dated, September 8, 2017, counsel for Plaintiff Lanard Toys Limited and counsel for Defendants Menard, Inc. and RMS International (USA), Inc. respectfully file this Joint Initial Conference Report ("Joint Report"). The parties state jointly as follows:

A. **SYNOPSIS**

    **1. Plaintiff's Claims:**

Plaintiff Lanard Toys Limited ("Lanard") is a leading manufacturer and seller of toys throughout the world, including sales on a private label basis to other toy retailers. In 2015, Lanard's designers developed a unique and original chalk toy— a hand-sized bag filled with powdered chalk styled as a hand grenade. The products come in a variety of fabric colors with corresponding internal chalk colors and feature either a yellow or red cord "fuse." Lanard called its toy the "Chalk Bomb" and has sold it packaged as single toys or in multi-packs of three and ten.

Lanard published its work by November 7, 2015. It submitted two copyright applications for the packaging to the United States Copyright Office on December 29, 2015. The Copyright Office registered Lanard's copyrights effective as of the same date and assigned Registration Nos. VA 2-022-296 and 1-999-283. Further, Lanard also applied for a federal trademark registration for the mark CHALK BOMB! for "toys comprised of chalk powder, namely, tossing toys and drawing toys" in International Class 028. The mark registered as U.S. Registration No. 5,046,808.

Lanard's CHALK BOMB!® has been a success in the market, with major United States retailers, including Wal-Mart, Albertsons, and Hobby Lobby making substantial sales of the product. By virtue of significant sales, quality and uniqueness of design, and the substantial time, effort, and money expended over the years by Lanard in creating, promoting, and popularizing this product, Lanard has developed a valuable reputation and goodwill in connection with its CHALK BOMB!® and the trade dress associated therewith. Lanard enjoys substantial demand for this product, and Lanard's trade dress embodied in the CHALK BOMB!® has become well known to consumers and the trade by widespread, continuous, and exclusive use thereof. The purchasing public and customers of

Lanard associate the CHALK BOMB!® trade dress exclusively with Lanard. Such trade dress is protectable and has acquired secondary meaning.

As a result of the foregoing, the relevant public has come to recognize an association between the CHALK BOMB!® design and Lanard, and have come to understand chalk toys having the design elements used by Lanard are made exclusively by Lanard or otherwise are associated with Lanard.

Menard, Inc. ("Menard") and RMS International (USA), Inc. ("RMS") (collectively, "Defendants") are now and have been offering for sale unauthorized and infringing copies of Lanard's CHALK BOMB!®. The unauthorized products and packaging contain the respective trademarks, "Chalk Bomb" and "Chalk Attack," which are remarkably identical and/or similar to Lanard's CHALK BOMB!® trademark, and copy the protectable expression in Lanard's design. Based on such conduct, Lanard has hereby alleged the following as its First Amended Complaint Menard and RMS: copyright infringement [17 U.S.C. §101 *et seq*]; false designation of origin [15 U.S.C. §1125(a)]; trademark infringement [15 U.S.C. §1114]; trade dress infringement [15 U.S.C. §1125(a)]; and Common Law Unfair competition.

**2. Defendants' Defenses and Counterclaims:**

Defendant RMS made two sales of the accused toy chalk bomb product. The first sale was to Defendant Menards, and the second (which was sold in different packaging from the first) was to a company called Big Lots. At around the same time that Plaintiff filed this lawsuit, it also filed a second lawsuit against Defendant RMS and Big Lots in California. RMS and Big Lots have moved the California court to transfer that related action to this Court, so that Defendants can seek consolidation of the two actions. The motion to transfer is scheduled to be heard on November 6, 2017.

Defendants deny that there has been any infringement, and Defendants have

challenged Plaintiff's claim to trademark rights in the descriptive term "chalk bomb" for a chalk filled bag intended to explode on impact with a hard surface. Defendants have also challenged Plaintiff's trademark registration for same. In securing its registration, Plaintiff was required by the US Trademark Office to disclaim any right to the term "chalk." Further, Plaintiff (and several third parties) uses the term "bomb" in a merely descriptive manner to describe the nature of its product, and similar products (e.g., Plaintiff's own packaging describes its product as "outdoor powder bombs"). Defendants also dispute Plaintiff's other claims of infringement.

Defendants' greater concern is not whether they will win or lose on the merits of this case. Defendants fear (and have already experienced) that merely defending this lawsuit will inflict on them (particularly Defendant RMS who supplied the product and is financially responsible for the costs of this litigation) legal fees and costs that are wholly disproportionate to the actual sales of the accused product.

The accused product no longer exists on the market. Before either defendant even filed an Answer in this action, the accused product was recalled. The product is also no longer being manufactured, advertised, distributed or sold. The product was sold for only a brief period of time. Collectively, the total profits from the sales of this product, combined with the profits from the separate lawsuit pending in California, was only slightly more than $17,000.

Therefore, regardless of the merits, this is a case that should be promptly resolved. Plaintiff's approach demands that Defendants spend an extraordinarily disproportionate amount of money on attorney's fees and costs to defend a discontinued product with modest sales. Given these low sales, Defendants, for purely business reasons, have already offered to sign an agreement, committing never to sell the product in the future, and offering to Plaintiff disgorgement of

every penny of profits, and offering even to compensate Plaintiff for its attorney's fees.

The product has no business value for Defendants. It is just one of thousands of different types of products that the Defendants have sold which certainly would never justify the costs of two separate federal litigations, to defend a claim which even if successful relates to total profits of slightly more than $17,000. For this reason (among others), RMS has moved the California Court to transfer the related case to this Court, so that it can be consolidated with this action, and hopefully alleviate at least some of the financial burden.

Defendants are willing to make all reasonable settlement concessions. They have already: (1) recalled the product; (2) offered to sign an agreement saying it would never be sold again; (3) offered to disgorge all profits; and (4) offered to even pay Plaintiff's attorney's fees. If forced to continue to defend this lawsuit, Defendants will regrettably do so. But, Fed. R. Civ. P. 1 and the proportionality requirements of Rule 26(b), and the equitable principles of this Court, dictate that this legal process should not be used to inflict unreasonable legal costs and fees on Defendant in having to defend this lawsuit, particularly given the considerable efforts Defendants have already undertaken to try to settle this matter.

### B. LEGAL ISSUES

#### 1. Copyright infringement

<u>Plaintiff's Summary of Legal Issues:</u>

The copyright infringement issues include whether copyright issues include whether Defendants' copying, display, sale and other use of Lanard's CHALK BOMB!® toy packaging in Defendants' "Chalk Attack" product (hereinafter "Knockoff Toy") is a violation of Lanard's exclusive rights to the original work of authorship in the packaging, including but not limited to the exclusive right to

-5-
JOINT RULE 26(F) REPORT
Case 4:17-cv-00550-SRB   Document 20   Filed 10/20/17   Page 5 of 16

make reproductions and distribute copies to the public. Further, whether the acts of the Defendants were committed willfully, knowingly, maliciously, and in conscious disregard of Lanard's rights.

Defendants' Summary of Legal Issues:

Whether Plaintiff can establish copyright protection, and if so, then whether Defendants have committed any acts of copyright infringement, and then if so, whether Plaintiff is entitled to any relief.

**2. False designation of origin**

Plaintiff's Summary of Legal Issues:

The false designation of origin issues include whether Defendants' use of the "Chalk Bomb" and/or "Chalk Attack" marks in interstate commerce, without Lanard's consent, is a false designation of origin causing a likelihood of confusion, mistake, and deception as to source, sponsorship, affiliation, and/or connection in the minds of the public. Defendants' conduct has infringed Lanard's trademark rights in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1).

Further, whether Defendants have been unjustly enriched by virtue of its deception of consumers and misappropriation of Lanard's goodwill. Lastly, whether Defendants' actions have known, intentional, wanton, and willful. The principles of equity warrant an award to Lanard of treble damages and profits, attorney's fees, and the costs of this action pursuant to 15 U.S.C. § 1117.

Defendants' Summary of Legal Issues:

Whether Plaintiff can claim any exclusive rights in the words CHALK BOMB, and if so, then whether Defendants are liable under Section 1125, and then if so, whether Plaintiff is entitled to any relief.

### 3. Trademark infringement

Plaintiff's Summary of Legal Issues:

The trademark issues include at least whether Defendants' used the "Chalk Bomb" and/or "Chalk Attack" marks to promote and sell Defendants' Knockoff Toy in violation of Lanard's rights in its registered trademark; whether Defendants' use of the "Chalk Bomb" and/or "Chalk Attack" marks are likely to cause confusion, mistake, and to deceive consumers; whether Defendants' actions constitute a blatant attempt to confuse the consuming public and to trade off Lanard's goodwill; whether Defendants' acted knowingly and willfully, with full knowledge of the likelihood of confusion and with the intent to deceive consumers in order to trade off the efforts and earned goodwill and reputation of Lanard; whether Defendants' have been unjustly enriched by virtue of its deception of consumers and misappropriation of Lanard's goodwill; whether Defendants' actions have known, intentional, wanton, and willful; and whether the principles of equity warrant an award to Lanard of treble damages and profits, attorney's fees, and the costs of this action pursuant to 15 U.S.C. § 1117.

Defendants' Summary of Legal Issues:

Whether Plaintiff can establish rights in the words CHALK BOMB, and then if so, whether Defendants are liable under § 1117, and then if so, whether Plaintiff is entitled to any relief.

Further, whether Plaintiff's Trademark Registration should be cancelled as being merely descriptive pursuant to 15 U.S.C. § 1119, 1064 and 1051.

### 4. Trade dress infringement

Plaintiff's Summary of Legal Issues:

The trade dress infringement issues include whether Defendants' use of Lanard's trade dress in commerce, including the trade dress in Lanard's CHALK

BOMB!®, is likely to cause confusion, or to cause mistake, or to deceive as to origin, sponsorship, or approval of Defendants' goods by Lanard, in violation of § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

Whether the acts by Defendants were committed willfully, knowingly, maliciously, and in conscious disregard of Lanard's rights and were done with full knowledge of the falsity of the designation of origin and with the intention of causing confusion and misleading and deceiving the trade and the public as to the origin and quality associated with Defendants' products.

<u>Defendants' Summary of Legal Issues:</u>

Whether Plaintiff can establish that it owns any protectable trade dress, and then if so, whether Defendants are liable under § 1125, and then if so, whether Plaintiff is entitled to any relief.

### 5. Common Law Unfair Competition

<u>Plaintiff's Summary of Legal Issues:</u>

The Common Law Unfair competition issues include whether the acts by Defendants' in causing confusion among the relevant public and causing a false association or sponsorship between Defendants' goods and Lanard, constitute unlawful, unfair, and fraudulent business practices prohibited by Common Law Unfair Competition. Further, whether the acts by Defendants' were committed willfully, knowingly, maliciously, and in conscious disregard of Lanard's rights.

<u>Defendants' Summary of Legal Issues:</u>

Whether Plaintiff can establish the requisite elements for a claim under Plaintiff's Common Law claim, and then if so, whether Plaintiff is entitled to any relief.

## C. MOTIONS

There are no pending motions in this action. There is a Motion to Transfer Venue currently pending in the related case in the United States District Court Central District of California against Big Lots Stores, Inc. and RMS International (USA) Inc., case no. 2:17cv-04469 R (JPRx). This motion was filed on October 6, 2017 and is set to be heard November 6, 2017 at 10:00 am in the above-mentioned Court. Plaintiff will oppose this motion, and will also point out certain Rule 11 violations on the face of the motion. Defendants dispute that there are any Rule 11 violations, and maintain that this inflammatory accusation is inappropriate, and does not belong in an Initial Report, and violates this Court's Tenets of Professional Courtesy.

### 1. Plaintiff

Plaintiff anticipates the potential for filing a motion for summary judgment of infringement on any of its asserted causes of action but reserves the right to amend this contention

### 2. Defendants

If RMS' motion to transfer the California case to this Court is granted, Defendants will seek consolidation of the two actions before this Court. At this time, Defendants do not anticipate other motions, but reserve their right to reconsider this position during the litigation.

## D. DISCOVERY

### 1. Changes in the Disclosures Under Rule 26(a)

The parties do not believe any changes should be made to the form or requirements of initial disclosures under FRCP 26(a)(1). The Parties have met and conferred regarding the initial disclosures required by Federal Rules of Civil Procedure Rule 26(a)(1). The parties served their initial disclosures on October 12,

2017.

2. Rule 26(f) Conference

Pursuant to FRCP 26(f) and the Court's Order [ECF Doc. 14] the parties met and conferred on September 28, 2017 at the office of Gordon & Rees and was attended by Reid E. Dammann, representing Lanard and Vicki Smith, Sardaryan and Jeffrey Lindenbaum representing Big Lots, Menards and RMS.

3. Discovery Status.

Other than informal disclosures that took place during settlement discussions that were unfruitful, no discovery has been taken to date, but Plaintiff intends to commence same imminently.

4. The Scope of Anticipated Discovery

a. At this time, Plaintiff anticipates that discovery will be needed on at least the following subjects:

> (a) the identification of each accused product manufactured, imported, sold and offered for sale by Menard and RMS;
>
> (b) infringement of Lanard's trade dress, by each of RMS' and Menard's products;
>
> (c) the amount of damages and profit disgorgement or other remedies that Lanard is entitled to receive on account of Menard's and RMS' infringement;
>
> (d) the source or sources of Menard's and RMS' infringing products;
>
> (e) the source of the engineering and design drawings used by RMS and Menards to create its infringing products;
>
> (f) Menard's and RMS' corporate structure; and,
>
> (g) Menard's and RMS' willful infringement, and any other applicable claim or defense raised by the parties.

b. At this time, Defendants anticipate that discovery will be needed on at

least the following subjects:

Plaintiff's ownership and rights in the alleged intellectual property, Plaintiff's allegations, and Plaintiff's claims for relief.

5. Proposed Discovery Plan Pursuant to FRCP 26(f)

|  | PLAINTIFF'S PROPOSED DATES | DEFENDANTS' PROPOSED DATES |
| --- | --- | --- |
| **Fact Discovery Cutoff:** | August 1, 2018 | February 14, 2018 |
| **Disclose opening expert witnesses and exchange opening expert reports:** | August 13, 2018 | April 14, 2018 |
| **Disclose rebuttal expert witnesses and exchange rebuttal expert reports:** | September 14, 2018 | May 14, 2018 |
| **Expert Discovery Cutoff:** | October 15, 2018 | June 14, 2018 |
| **Filing Dispositive Motions (including *Daubert* Motions)** | November 5, 2018 | July 14, 2018 |
| **Teleconference with Court to Discuss Status of Settlement Negotiations** | February 4, 2019 | June 16, 2018 |
| **Pretrial Conference:** | February 15, 2019 | October 29, 2018 |
| **Trial Commencement Date:** | March 4, 2019 | November 12, 2018 |

6. Discovery Phases and Limitations

The parties agree that discovery should not be conducted in phases or otherwise be limited, apart from that Defendants further state, however, that the limitations set forth in the Federal Rules of Civil Procedure should be read in

connection with the limitations of proportionality set forth in Fed. R. Civ. P. 26(b).

7. <u>Changes to Limitations on Discovery</u>

The parties agree that there should be no changes to the limitations set forth in the Federal Rules of Civil Procedure relating to discovery. The parties recognize, however, that the convenience of witnesses should be accommodated by counsel for both parties when scheduling non-expert depositions. The Parties reserve the right to seek leave from the Court should later developments reveal that additional discovery is required. Defendants maintain that given the very low volume of sales at issue in this case, Rule 26's mandate on proportionality will be very important, particularly that the scope of discovery should take into account "the amount in controversy . . . the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

8. <u>Stipulated Order Governing Confidential Materials</u>

The parties agree that a protective order will be necessary due to confidential business information that may need to be exchanged in this action. In addition to addressing the treatment of confidential business information, the parties anticipate that this order will address issues related to inadvertently produced privileged information, as well as privilege logs and electronically stored information. The parties anticipate filing a comprehensive stipulation and proposed protective order for the Court's consideration and will in good faith negotiate a claw back provision therein.

9. <u>Depositions</u>

The parties agree that the FRCP will govern all depositions taken in this action. The parties will cooperate in deposition scheduling and will cooperate in good faith to make efficient use of deposition time. Defendants state that Rule 26(b)'s restrictions on proportionality should govern the amount, scope and

scheduling of depositions. Fed. R. Civ. P. 26(b).

   10. <u>Other Issues Related to Discovery</u>

The parties agree that attorney-client communications with litigation counsel that are created after the filing of the Complaint in this action need not be included in a privilege log. Once the parties have exchanged privilege logs, any party may move the Court for an order compelling the production of any documents or information identified on any other party's privilege log. The parties will exchange privilege logs no later than 30 days after each party begins production of the documents requested of it.

   11. <u>Electronic Discovery</u>

<u>Plaintiff's Position:</u>

Plaintiff seeks that electronically stored information ("ESI") shall be produced electronically (e.g., on CD or DVD discs or portable hard drives) in its native format so long as that format is of a commonly used and easily readable type without the need for specialized or uncommon software. Plaintiff submits that documents produced in Outlook, PDF, TIFF, JPEG, Word, Excel, PPT (PowerPoint) and WordPerfect formats are of common format which do not require specialized or uncommon software to read. Plaintiff seeks that electronic documents in formats other than those specifically identified above will be produced in PDF format - in lieu of native files with metadata included. Notwithstanding the above, to the extent either party believes, on a case-by-case basis, that documents should be produced in an alternative format.

<u>Defendants' Position:</u>

The Defendants seek that all parties be required to only produce documents in .pdf format, with either party reserving its right to request, upon a reasonable showing of good cause that production in its native format would be necessary.

12. Evidence Preservation

The Parties believe electronic discovery and specifically, the preservation of electronic information and proper disclosure of electronically stored information may be an aspect of this case. The Parties discussed the need to inform their clients of the retention of electronically stored information. In addition, the Parties discussed the use of "claw back" agreements for privilege issues and believe such agreements and/or stipulations may be used in this case, so long as such agreements are used in good faith in case of inadvertent production.

13. Third Party Document Subpoenas and Depositions

In accordance with the Federal Rules of Civil Procedure, the number of document subpoenas propounded by each side will not be limited.

The Defendants note, however, that Rule 26(b)'s limitations regarding proportionality should further govern the number and scope of third party subpoenas.

The Parties intending to depose third party witness shall confer with opposing counsel prior to issuing a subpoena or deposition notice in a good faith effort to schedule depositions for dates and locations that are acceptable to all Parties.

E. **RELATED CASES**

On June 15, 2017, Plaintiff Lanard filed a complaint in the United States District Court Central District of California against Big Lots Stores, Inc. case no. 2:17-cv-04469-R-JPR. On August 2, 2017, Plaintiff Lanard filed an amended complaint adding and RMS International (USA) Inc. as a defendant. On September 1, 2017, Menard, Inc and RMS International (USA) Inc. filed their Answer, Defenses and Counterclaims to Lanard's First Amended Complaint. RMS has filed a motion to transfer this (RMS/Big Lots California) action to the W.D. Missouri so that it may be consolidated with this action. The Plaintiff has opposed the motion.

The California Court will hear the motion on November 6, 2017.

Further, on June 15, 2017 Plaintiff Lanard filed a complaint in the United States District Court Central District of California against Target Corporation, case no. 2:17-cv-04472-AB (JPR). On September 1, 2017, Target Corporation filed its Answer to Lanard's Complaint.

## F. TRIAL

The parties have requested that this case be tried by a jury and believe the following:

Plaintiff estimates that trial will take approximately 10 to 15 court days.

Defendants estimate 1-3 days.

## G. OTHER ITEMS

### 1. Witness and Exhibit Lists

Final lists of witnesses and exhibits under FRCP 26(a)(3) shall be exchanged by all parties thirty (30) days before the first day of trial as set by the Court. Each party shall have ten (10) business days after exchange of the final lists of witnesses and exhibits to lodge objections under FRCP 26(a)(3).

### 2. Service via email

The parties agree to service by email, of all materials required to be served under FRCP 5. Consistent with FRCP 6(d), three days shall be added to the end of the prescribed responsive periods (calculated as set forth in FRCP 6(a)) for all documents served by email. No hard copies need be mailed.

### 3. Complex Case

The parties do not believe that this case is sufficiently complex that the procedures of the Manual for Complex Litigation should be utilized.

### 4. Motion Schedule

Each party may file discovery motions as appropriate. Each party may file motions for summary judgment according to the discovery plan set forth above, as

to all or certain causes of action and/or affirmative defenses depending upon the facts established during the course of discovery.

    5. <u>Additional Parties</u>

Plaintiff does not anticipate the appearance of additional parties, unless fact discovery reveals third party involvement in the defendants' conduct. The defendants do not anticipate the appearance of additional parties at this time.

    6. <u>Expert Witnesses</u>

Please see section D(5) above.

    7. <u>Mediation</u>

On October 4, 2017 this Court scheduled a mediation conference for 9:30 a.m. CST, on October 30, 2017 in Courtroom 6A before the Honorable Cynthia A. Norton.

Dated: October 20, 2017

Respectfully Submitted,

By:    /s/ Karin A. Curtis

Karin A. Curtis
KCurtis@grsm.com
GORDON & REES
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071
Tel: (213) 576-5000
Fax: (213) 680-4470

*Attorney for Plaintiff*

By:    */s/ Jeffery A. Lindenbaum*
Jeffrey A. Lindenbaum
Collen IP
The Holyoke-Manhattan Building
80 South Highland Avenue
Ossining, NY 10562
(914) 941-5668
jlindenbaum@collenip.com

*Attorney for Defendants*